In the Matter of the Estate of CHARLES H. HAYDEN, Deceased.

Surrogate's Court, Jefferson County, April 15, 1931.

*Francis E. Cullen,* for Charles A. Covert, trustee, and Belle I. Prentiss and Lillian Hayden Fenton, *cestuis que trustent.*

*John H. O'Brien,* for Charles Leverett Hayden, trustee and contingent remainderman.

GRANT, S.   In and by the last will and testament of Charles H. Hayden, deceased, and the codicil thereto, duly admitted to probate September 4, 1920, Charles Leverett Hayden, decedent's son, of Alexandria Bay, N. Y., William C. Willard, banker, of Columbus, Ohio, and Charles A. Covert, accountant, of Columbus, Ohio, were named executors of decedent's will and trustees of the trusts therein created.   The three qualified and acted as such executors, had their account as such judicially settled, and qualified and have been acting as such trustees.   William C. Willard died December 11, 1930.   Charles A. Covert, one of the surviving trustees, has nominated George T. Spahr, of Columbus, Ohio, and Charles Leverett Hayden, also one of the surviving trustees, has nominated A. Raymond Cornwall, of Watertown, N. Y., for appointment to succeed the said William C. Willard as trustee herein.

The 9th paragraph of said will, as amended by the 2d paragraph of said codicil, among other things provides that " In the event of the death, resignation or disqualification of one or more of my executors and trustees hereinafter named, the surviving executor or executors and trustee or trustees, shall nominate other suitable person or persons to the proper court for appointment as such executor or executors and trustee or trustees to the end that there shall at all times be three, and three only acting executors and trustees."   The said nominations have been made pursuant to this provision of the will.   These nominations are addressed to the sound discretion of the surrogate, and if either nominee is properly qualified to perform the duties required of him in the proper administration of the trust estates it is the duty of the surrogate in the

exercise of that sound discretion to appoint said nominee. If both are qualified it then becomes the duty of the surrogate to elect between them and to appoint the one qualified to render the more efficient service. The qualifications of each nominee and the reasons for his appointment have been most ably presented.

It seems to me that the appointment of A. Raymond Cornwall will serve the interests of these trusts and the interests of all sharing therein better than would the appointment of George T. Spahr. Mr. Cornwall is a man of middle age, in the prime of life, and in the natural course of events with many active and useful years ahead of him. He is an attorney with years of experience in the handling of substantial estates. He is thoroughly familiar with these trusts and has intimate knowledge of their properties, securities, problems, policies and management, acquired through his service as attorney for the executors and trustees from the inception of the estate. His integrity, ability and qualifications are unquestioned. They are conceded. Considering the unfortunate, self-inflicted death of the deceased trustee and the possible complications that may arise therefrom, it seems advisable, particularly at this time, that someone familiar with the details of these trust estates should be appointed as successor trustee. Again, considering that Mr. Covert is seventy-seven years of age, it seems particularly advisable that the successor to the deceased trustee should be a much younger man, one who is familiar with these trusts, their properties, securities, problems, policies and management, and who has at least some knowledge of the persons interested in them, to the end that there may be some degree of continuity in the administration and management of said trusts. Mr. Cornwall's appointment will meet these requirements. Mr. Spahr is seventy-four years of age. Presumably his years of business activity are few. If appointed he in all probability would be able to serve but a short time. Mr. Spahr is not a publicist and banker as Mr. Covert testified, stated in his nomination and would have the court believe. He is a printer. He is also a director of the City National Bank and Trust Company of Columbus, Ohio. He spends about eight to ten hours in the course of a month attending directors' meetings and meetings of the said bank's trust committee, of which he is chairman. He is not familiar with these trust estates and has had no connection whatever with them, except that in his printing establishment he has bound some of the reports of the trustees. Mr. Spahr's integrity is above question. He is a man undoubtedly entitled to be held in high esteem. If he were younger his nomination would make a stronger appeal. But he has reached the age when men generally begin to lessen their activities

and to lighten their loads rather than to assume added burdens and responsibilities. It seems unwise to place the active control and management of these trusts in the hands of two trustees both of whom are in age considerably above man's allotted three score years and ten.

It is contended that the naming of William C. Willard and Charles A. Covert, both residents of Columbus, Ohio, as two of the three executors and trustees, the provision that Mr. Covert shall have charge of the accounting and bookkeeping necessary for the proper management of the estate and trusts, the requirement that at least two of the three executors and trustees be present whenever any one is admitted to the place of deposit of the securities of the estate and trusts, the authorization to invest in Columbus real property and in first mortgages upon Ohio real estate, and the provision for the burial of himself and of those who are the objects of his bounty in the mausoleum at Columbus, evidence an intention on the part of the testator that the estate and trusts be administered at Columbus, and that, therefore, the nomination of Mr. Spahr, a resident of Columbus, is more consonant with the entire spirit of the will and the intention of the testator than is that of Mr. Cornwall. There would seem to be considerable merit in this contention if it were not for the fact that the testator at the time of his death, and at the time his will was made, was a resident of the town of Alexandria, in the county of Jefferson and State of New York, and that the assets and properties of his estate, aside from the mausoleum, were then within the State of New York and not in Columbus, Ohio. It can hardly be presumed that it was the testator's deliberate intent that both the assets of the estate and trusts, and the executors and trustees actively in charge thereof, should be at all times without and beyond the territorial jurisdiction and the control of the court in which the estate and trusts were pending. Likewise it can hardly be presumed that the testator intended to deprive his son, Charles Leverett Hayden, of a part in the active control and management of said estate and trusts unless he should become a resident of Columbus, Ohio. He names this son first in order as executor and trustee, then William C. Willard, then Charles A. Covert. In paragraph 11 of his will the testator says, " and the fact that my son Charles Leverett Hayden is a legatee under this will shall not preclude him from receiving compensation as executor and trustee." In paragraph 7, subdivision 4, he appoints his said son guardian of the person of Hayden Bonsal, testator's grandson. It seems to me that the testator clearly expresses confidence in his son and I believe that it was the testator's intent that this son should share

actively in the control and management of his estate and of these trusts.

I do not believe that it was the intent of the testator that the assets of the estate and of the trusts should be removed from the territorial jurisdiction and beyond the control of the court in which their administration should be pending. These assets were removed from the State of New York to Columbus, Ohio, after the testator's death and apparently without any authority from this court. Mr. Covert's memory lapsed as to this removal of assets but it appears that he was present at the National Park Bank, New York city, when the testator's safe deposit box was first opened after the testator's death; that a list of the securities was then or later made; that the said securities were retained in this box for a period of time and were then transferred to Columbus, Ohio, Mr. Covert attending to the shipment of them. These securities should be returned to the State of New York. They should not continue to be kept outside the jurisdiction and control of the court in which the trust estates are pending. Possibly it has been more convenient for the two trustees residing in Columbus that the securities should be there, because of the requirement that at least two trustees " be present in person together whenever anyone is admitted to the place of deposit of said securities." With Mr. Willard's death that reason no longer exists. Mr. Hayden is a resident of Jefferson county, N. Y., and Mr. Cornwall's appointment will give two trustees residing within the jurisdiction of this court. When these securities are brought back into the State of New York, where they should be, the requirement that at least two of the trustees shall be present whenever any one is admitted to the place of deposit of said securities can be met here as well and with as much convenience as if they were in Columbus, Ohio. The property of these trust estates outside of said securities consists of the mausoleum in Green Lawn Cemetery, at Columbus, Ohio, and Fairy Land or Hayden island in the St. Lawrence river near Alexandria Bay, Jefferson county, N. Y. The trustees are charged with the care and maintenance of these two properties. They can be cared for as well, and with as great convenience, from Jefferson county, N. Y., as from Columbus, Ohio. Although the testator authorizes investments in real property located in the central business portion of Columbus and also in first mortgages on Ohio real estate, no such investment has ever been made, although the estate and these trusts have been pending for over ten years.

The support of Mr. Spahr's nomination by Belle I. Prentiss, Lillian Fenton, Marie H. Powell, Earle Hayden and Peter Hayden,

constituting, it is claimed and urged, the great bulk of interest in the estate, loses the greater part of its weight when it appears that this support is largely based upon the alleged advisability of continuing the administration and management of the trusts in Columbus and the retention of the securities there.

The only other objection raised to Mr. Cornwall's appointment is that he is the personal attorney of Charles Leverett Hayden, his nominator; that if he is appointed he and Mr. Hayden will have a controlling power over the entire assets of the estate and the administration of the several trusts; that Charles Leverett Hayden is a contingent remainderman of such trusts, and that as such his interests might well become adverse to those of the *cestuis que trustent*, and that as he is already a trustee and thus amply able to protect his own interests it would be unwise and unfair to appoint as successor trustee Mr. Hayden's personal attorney. This objection does not seem to have any great force or validity. While it seems to be true that Mr. Cornwall has done whatever legal work Charles Leverett Hayden may have had to have done for some years there has been very little of such work and he has also served as attorney for this estate. Mr. Willard and Mr. Covert as well as Mr. Hayden have employed him and have sought, have relied upon, and have been guided by his advice in all legal matters relating to the estate and trusts since the inception thereof. This clearly indicates their confidence in him. If it is true that with Mr. Cornwall's appointment he and Mr. Hayden will have a controlling power over the entire assets and administration of the several trusts, it is equally true that with Mr. Spahr's appointment he and Mr. Covert would have that same controlling power. But Mr. Hayden has a contingent remainder interest in the corpus of all of these trusts. He, therefore, has an active interest in their proper administration and in the proper investment and preservation of said corpus. It is not quite clear how Mr. Hayden's interests as contingent remainderman may well become adverse to the interests of Belle I. Prentiss or of Lillian Hayden Fenton. The testator seems to have eliminated or reduced to a minimum the probability of these interests becoming adverse. In paragraph 8 of his will he specifies and limits the authorized investments as follows: " I hereby authorize, empower and direct my executors and trustees hereinafter named, for the purpose of administering said trusts, to invest and from time to time reinvest the net proceeds of any and all sales of real estate, stocks, bonds and other personal property, and also all money or securities which may come into their hands from every other source, in interest bearing first mortgage bonds of railroads paying not

less than four per cent. per annum dividends on their capital stock, or in real estate located in the central business portion of the City of Columbus, Ohio, or in National Bank stocks, or in first mortgages on Ohio real estate, or in the stocks of other high grade corporations which have regularly paid dividends long enough to insure their stability." In the 7th paragraph he directs the distribution of the net income, monthly or quarterly, in the discretion of the executors, to those entitled, to the two daughters during their natural lives and to the grandchildren during the times in said will specified. If there is any probability of the life use interests clashing with the remainder interests the remainder interests are entitled to preference because theirs is the interest which tends to preserve the corpus. Mr. Hayden's remainder in the trusts for the benefit of his two sisters is contingent upon the deaths of the sisters without issue and also upon the said sisters predeceasing him. It cannot be seriously contended that he has any control over the contingency in either case. As for the grandchildren, they are Mr. Hayden's own children. Presumably he has the usual parental interest in their welfare. Presumably no stranger would have the same interest. In the trusts created for their benefit the testator provides that the trustees " shall pay over the net income of said three trusts to said three grandchildren or their guardian in monthly or quarterly payments until they shall respectively attain the age of twenty-one years, at which time my trustees may, if said grandchildren or either of them in their judgment possess business and personal habits which will insure a prudent and careful use thereof, pay and deliver one-third thereof to them in fee simple, and continuing to pay them the income on the balance in the exercise of a like discretion, they may pay them or either of them, another one-third upon their attaining the age of twenty-five years, and continuing to pay them the income on the balance still remaining, they may pay the remaining one-third upon their attaining the age of thirty years respectively. In the event of the death of any one or all of said three grand-children leaving lawful issue surviving, before said trust has been distributed, the balance remaining shall forthwith vest in such lawful issue, share and share alike. In the event of the death of any one of said three grandchildren, leaving no lawful issue sur-viving, the balance of said trust fund remaining shall vest in the surviving brother or sister, or their issue, *per stirpes* and not *per capita*. In the event of the death of all three grandchildren leaving no lawful issue or descendants of lawful issue, the balance of said trust fund remaining shall pass in fee simple to their father, Charles Leverett Hayden, if living, and if said Charles Leverett Hayden

is dead, then to his next of kin. * * * 7. The discretion given to said trustees in regard to the distribution of the aforesaid trusts to any and all of my grandchildren herein named, shall be continuing until all distributions have been made, and a partial distribution shall not preclude said trustees from withholding the remaining portion of any share during the natural life of said grandchild, if, in the judgment of said trustees, the conditions upon which the respective distributions may be made have not been met in the use of any distribution previously made." The corpus of the trusts for the benefit of each of these children is payable to Charles Leverett Hayden only in the event of the death of all three of said children, without lawful issue or descendants of lawful issue, prior to his death. The chance of any conflict in interest between him and these children in reference to these trusts is remote.

It seems to me that A. Raymond Cornwall should be appointed to succeed William C. Willard, deceased, as trustee to act with Charles Leverett Hayden and Charles A. Covert, surviving trustees, in the administration and management of these trusts and I so hold.

Submit decree accordingly.