**BOONE v. WACHOVIA BANK & TRUST CO. (two cases).**

**Nos. 9442, 9443.**

United States Court of Appeals
District of Columbia.

Argued April 17, 1947.

Decided Sept. 22, 1947.

Mr. Richard E. Wellford, of Washington, D. C., for appellant.

Mr. Louis M. Denit, of Washington, D. C.; with whom Messrs. A. Leckie Cox, Thomas S. Jackson and Coleman L. Diamond, all of Washington, D. C., were on the brief, for appellee.

Before STEPHENS, CLARK and WILBUR K. MILLER, Associate Justices.

WILBUR K. MILLER, Associate Justice.

These appeals involve the validity of a judgment removing a testamentary trustee which was entered, pursuant to the application of the beneficiaries, by a North Carolina court which had admitted the will to probate, established the trust thereunder and appointed the trustee, and was exercising supervision over the administration. The order of removal is attacked by the deposed trustee because process on the application for removal was not served on him in North Carolina and he did not appear or answer.

Prior to 1940, Frances M. Lightner died testate, a resident of and domiciled in North Carolina. She nominated her son-in-law, Daniel F. Boone, as executor of her will and as trustee thereunder. Boone was also a North Carolinian at that time. The will was duly admitted to probate in the Superior Court of Polk County, North

Carolina, and Boone qualified as executor and trustee. Later he sued in the Superior Court for a construction of the will with respect to the trust imposed upon certain personalty and, having obtained the court's opinion, proceeded with the administration of the trust.

In the same court, on November 25, 1942, the beneficiaries of the trust filed a complaint against the trustee, seeking his removal. Boone had left North Carolina in 1940 and had taken the trust assets with him to the District of Columbia. Service was had on him in the removal proceeding by publication and, in addition, a summons was served on him in the District of Columbia by a United States marshal, both notifications being authorized by North Carolina statutes. He was not served in North Carolina, however, and did not appear or plead in response to the removal petition; but, more than a year after the filing of that petition, Boone filed in the court in which it was pending his fourth annual accounting as trustee.

The Superior Court entered judgment on February 7, 1944, removing Boone as trustee and appointing Wachovia Bank & Trust Company as his successor. As a basis for its decree, the court found as facts that Boone's misconduct in handling the trust fund had resulted in a loss of $11,490.56, for which judgment against him personally had theretofore been rendered by the Superior Court, and affirmed by the Supreme Court of North Carolina and the Supreme Court of the United States; that without the approval or authority of the court or any court he had removed the trust fund to the District of Columbia; and that in other respects he had acted improperly. It determined that he was an unfit, unsuitable and improper person to act as trustee. The successor trustee was expressly authorized and directed to insti-

tute and prosecute in any jurisdiction such actions as might be necessary to obtain possession of the trust assets.

Pursuant to that authority, the successor trustee sued Boone on April 2, 1945, in the District Court of the United States for the District of Columbia to recover all assets of the trust estate and to obtain an accounting. He answered,[1] stating that he was testamentary trustee under the will of Frances M. Lightner, and that the proceeding in North Carolina to remove him as trustee had been instituted after he had moved his domicile from that state to the District of Columbia, and after he had brought the trust assets to the District. He pleaded that he had not appeared in the removal proceeding and had not been served in North Carolina with respect thereto; that, therefore, the alleged successor trustee had no power or authority to maintain in any jurisdiction an action for the recovery of the trust assets.

Summary judgment was granted to Wachovia,[2] and Boone was ordered to surrender to it all assets which he held as trustee. The action having also been referred to the District Court's auditor, Boone filed with him on July 29, 1946, a verified account. Later the District Court confirmed the auditor's report, which disallowed commissions claimed by Boone, without prejudice to his right to claim them in the North Carolina court.

The appellant assigns as error the District Court's refusal to dismiss the complaint, its grant of summary judgment to Wachovia, and its denial of commissions.

It is thus seen that we are called upon to decide whether the North Carolina removal judgment was entitled to full faith and credit in the District Court, as the appellee contends, or was not so entitled because, as the appellant argues, he was denied due process of law.

---

[1] The complaint was unnecessarily in two counts. The first count sought possession of certain enumerated trust assets, and the second sought to recover all property held by Boone as trustee together with an accounting. At an early stage in the proceeding Boone's motion to dismiss both counts was granted as to the first and denied as to the second.

We think it was error to dismiss the first count. The error was in effect corrected, however, by the final judgment which, in response to Wachovia's motion for summary judgment, granted the relief sought in the first count.

[2] Wachovia Bank & Trust Company, successor trustee, will sometimes be referred to as "Wachovia."

If a judgment of a state court is to be accorded full faith and credit by a court of the United States,[3] it must have been rendered by a tribunal competent by the law of its creation to pass upon the subject matter. The Superior Court of Polk County, North Carolina, being a court of equity, had the inherent power to establish and supervise trusts, to appoint and remove trustees. Such power is not dependent upon statutory authorization nor upon a direction of the instrument of trust,[4] and is as broad and comprehensive as the exigencies of any case may require.[5] Consequently, the Superior Court had the basic right to deal with such a situation.

A court's power to pronounce judgment depends not only on its constituted authority to deal with cases such as that before it, but also upon its actual jurisdiction over the particular subject matter involved; and, in actions not strictly in rem, upon having the defendant before it by appearance or by service of process, either actual or constructive, as the nature of the proceeding may require or permit.

The Superior Court initially had complete control of the trust relationship, the trust assets, the beneficiaries and the trustee. Had that status remained unchanged, there could be no challenge here of its judgment removing the trustee. It did remain unaltered except for Boone's act of establishing a domicile in the District of Columbia and taking the assets with him, without authority to do so, either from the will or from an order of the appointing court. Such removal of the assets was wrongful.[6] It was the trustee's duty to administer the trust according to the law of North Carolina, and under the supervision of the court of that state which had established the trust and appointed him as trustee.[7]

The Superior Court of Polk County, having exercised its inherent power as a court of equity to establish a trust over assets subject to its control, and being engaged in supervising the administration thereof by its appointed trustee, did not lose jurisdiction over the trust or the trust assets merely because the trustee wrongfully removed the assets to his new domicile in the District of Columbia,[8] nor did the trustee's absence from North Carolina impair or destroy such jurisdiction.[9] Boone's contention that he had deprived the Superior Court of Polk County of jurisdiction over the trust assets by carrying them to the District of Columbia is thus seen to be unsound.

---

[3] United States courts are bound to give to the judgment of a state court the same faith and credit which the courts of another state are bound to give it. Pennoyer v. Neff, 95 U.S. 714, 733.

[4] III Pomeroy's Equity Jurisprudence 2504 (1918 ed.); Gould v. Gould, 108 Misc. 42, 178 N.Y.S. 37, 48.

[5] In re Kilgore, 120 Ind. 94, 22 N.E. 104.

[6] This is so obvious that citation of authority seems unnecessary. It was so held, however, in In re Hayden's Estate, 141 Misc. 644, 253 N.Y.S. 641, 644.

[7] 1 Beale, Conflict of Laws § 102.2, p. 443: "Any question concerning the administration of a trust will be settled in the court which has jurisdiction over the fund. Where the trust was created by will that court is the court of the domicile of the deceased. The fact that the trustee named is a resident of another state, or removes to a foreign state, does not affect this question, for the trust is not determined by the residence of the trustee."

[8] "If the res consists of real or personal property it must be within the territorial jurisdiction of the court and must be brought within its control by appropriate process and seizure or the equivalent; but after jurisdiction has thus been acquired it is not lost by the accidental, fraudulent or improper removal of the res from custody." 3 Freeman on Judgments 3142-3.

In support of this statement Freeman cites The Rio Grande, 23 Wall. 458, at page 463, 23 L.Ed. 158, where the court said: "We do not understand the law to be that an actual and continuous possession of the res is required to sustain the jurisdiction of the court. When the vessel was seized by the order of the court and brought within its control the jurisdiction was complete. Subsequent improper removal cannot defeat such jurisdiction."

[9] Pennington v. Smith, C.C., 69 F. 188; Gassert v. Strong, 38 Mont. 18, 98 P. 497, 501.

We turn to consider the appellant's argument that his absence from North Carolina had rendered the appointing and supervising court powerless to remove him; for such is the effect of his assertion that, in the circumstances, the order of removal is invalid because he did not appear and was not personally served in North Carolina.

In examining this argument it is of prime importance properly to classify the removal judgment as to whether it was in personam, in rem or quasi in rem. The necessity of determining the form of the action in that respect, in a case such as this, was pointed out by the Supreme Court in Grannis v. Ordean, 234 U.S. 385, 392, 34 S.Ct. 779, 782, 58 L.Ed. 1363, where it was said: "In determining what is due process of law within the meaning of the 14th Amendment, a distinction is to be observed between actions in personam and actions in rem or quasi in rem. In Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565, 572, it was held that by force of the Amendment a judgment rendered by a state court in an action in personam against a nonresident served by publication of summons, but upon whom no [personal] service of process within the state was made, and who did not appear to the action, was devoid of any validity, either within or without the territory of the state in which the judgment was rendered; it being, however, conceded that a different rule obtains where, in connection with initial process against a person, property in the state is brought under the control of the court and subjected to its disposition, or where the judgment is sought as a means to reach such property or affect some interest in it; in other words, where the action is in the nature of a proceeding in rem. * * *"

Appellant quotes to us, in support of his theory that the judgment removing him is in personam, an excerpt [10] from Parker v. Kelley, C.C., 166 F. 968, 970, and heavily relies upon that case. In the Parker case, a proceeding brought for the sole purpose of removing a trustee was held to be strictly in personam, and a judgment removing him was refused full faith and credit in another sovereignty because the trustee had not been before the removing court by appearance or by personal service. The decision seems to us to be correct, but the present case is distinguishable because of its different factual and legal aspects.

In the cited case, Kelley was named as trustee in a written instrument executed in Massachusetts, and removed the trust assets to New York with the consent of the trustor. No Massachusetts court had asserted or exercised jurisdiction over the trust. The beneficiary instituted in Massachusetts a proceeding to remove the trustee under a statute of that state which provided that a trustee under a written instrument may be removed by the court after notice to him and all interested persons, and after he has been afforded an opportunity to be heard and to show cause why he should not be removed. Kelley appeared specially to challenge the jurisdiction, did not plead to the merits and was not served in Massachusetts. Nevertheless a judgment of removal was entered. Parker was appointed successor trustee and sued Kelley in the New York federal court to recover the trust assets. Kelley's defense was that the removal judgment was not entitled to full faith and credit. The New York court held that the sole purpose of the Massachusetts proceeding was to remove the trustee, and so that the judgment was in personam.

But in this case, the North Carolina court, prior to its order removing the trustee, had jurisdiction of the trust and was supervising its administration by Boone; he had sought its construction of the trust,

[10] "In view of the removal of the trust funds and property in question from the state of Massachusetts to the state of New York, this case does not come within any exception by which there may be a valid determination of the proceeding without service of process upon the defendant in the state where the action was begun or without his voluntary submission to the jurisdiction of the court.

The proceeding was not in rem, nor was the res the status of the existing relationship between the parties. It was a proceeding in personam against the individual trustee to remove him on account of his unfitness or personal misconduct, and in such an action constructive service of original process upon a nonresident is insufficient."

and had made accounting reports to the Superior Court, one such having been filed by him, as we have seen, more than a year after the beneficiaries petitioned that he be removed.

In Parker v. Kelley, the only purpose was to induce a court, theretofore a stranger to the trust, to remove a trustee. Here, the trust res was already in the court's hands and under its control, and the question of what trustee should administer it was collateral to the jurisdiction over the res, and the trustee's right to continue to act was at most a right in or to the res, or one which arose therefrom. The distinction which we have pointed out between that case and the present situation is recognized by Freeman in his work on Judgments,[11] where Parker v. Kelley is cited in support of the following textual statement: "Where a trust is created under a written instrument, an action to remove the trustee is a proceeding in personam rather than in rem, and while it might perhaps be transformed into a proceeding quasi in rem as to the trust property if that were brought within the jurisdiction of the court, so that constructive service would be sufficient as to the res, yet if both the property and the trustee are in another state when the action is instituted, a judgment of removal upon constructive service is ineffective and not entitled to full faith and credit." Freeman's consciousness of the factual situation in the Parker case is shown by the fact that he was careful to point out that the removal proceeding there involved might have become quasi in rem had the trust property been brought within the court's jurisdiction; in which event he says constructive service would have been sufficient to cause the judgment of removal to be entitled to full faith and credit.

■ The Superior Court judgment was, therefore, not in personam. We think it properly falls within the classification known as judgments quasi in rem. The Supreme Court has said that judgments in personam, in rem and quasi in rem cannot be defined but must be classified as they are encountered. Yet definition has been attempted. A judgment quasi in rem has been described as a judgment against a person with respect to property, as distinguished from one against property only, or a person only.[12]

■ It may be said also that judgments quasi in rem, which lie between the extremes of those strictly in rem or strictly in personam, are so denominated because they affect not only the status of or title to the res, but likewise rights of individuals in or to the res, or arising from it. Such an adjudication is binding and obligatory on the defendant in any court of any state, if he were properly before the court by constructive service of process.[13]

It has been expressly held that the court which appoints a trustee has power to remove him and appoint another in his stead when he goes out of the jurisdiction, and that a proceeding to remove such a trustee is in rem, so that notice to him by constructive process is sufficient.[14] Our own decisions are to the effect that the court which is supervising the administration of a trust and has jurisdiction of the trust res, has power to remove, for cause, a trustee who has been notified of the application for

11 P. 2853, vol. III, 5th Ed. (1925).

12 3 Freeman on Judgments 3124; Hill v. Henry, 66 N.J.Eq. 150, 57 A. 554; Gassert v. Strong, 38 Mont. 18, 98 P. 497.

13 Combs v. Combs, 249 Ky. 155, 60 S.W.2d 368, 370, 89 A.L.R. 1095. This case has been frequently cited by text writers. In the course of the opinion it was said: "Between the extremes of strictly in rem proceedings and those which are strictly in personam is a class designated by courts and law-writers as proceedings quasi in rem, and which are so characterized because judgments in such actions affect not only the title to the res, but likewise to rights in and to it possessed by individuals. * * * In such cases it is thoroughly settled that the personal rights of the defendant in and to the res within the custody of the court may be dealt with and adjudicated in so far as it adjudicates the status of the particular res, including the title thereto; and such an adjudication, if the defendant were properly proceeded against even by constructive process, would be binding and obligatory on defendant in any court of any state."

14 Letcher's Trustee v. German National Bank, 134 Ky. 24, 119 S.W. 236, 20 Ann.Cas. 815.

removal only through constructive service or process. D.C.Code (1940), Title 13, § 108; Green v. Brophy, 71 App.D.C. 299, 305, 110 F.2d 539, 545.

In Buchanan v. National Savings & Trust Company, 79 U.S.App.D.C. 278, 146 F.2d 13, 14, a wife sued to have it adjudged that her husband, who was beneficiary of certain trusts established by his father received the income therefrom as a trust fund for the support of his wife and children. The husband, being absent from the District of Columbia, was proceeded against by publication under Title 13, § 108. He made no defense and entered no appearance. We held that the immediate object of the wife's suit to establish the husband's trust income as being also in trust was "to enforce or establish a lawful right, claim or demand against property within the jurisdiction of the court; hence it comes within the meaning of § 13—108." We further held that the absent husband was not only a beneficiary but a trustee as well; that if he defeated the purpose of the settlor by failing to provide for his child, a court of equity could require the carrying out of the trust and, if necessary, appoint a new trustee for that purpose. See also Morgenthau v. Fidelity & Deposit Company, 68 App.D.C. 163, 94 F.2d 632.

■ On reason and authority, it is our view that procedure by the appointing court, which already has jurisdiction of a trust and the assets subject to it, to remove an absent trustee who has wrongfully taken the trust assets with him and done other acts justifying his removal, is a proceeding quasi in rem, and that notice by constructive service is sufficient to satisfy the requirements of due process.

In addition to what has been said, for yet another reason due process did not require that a summons issued on the removal petition be personally served on Boone in North Carolina to enable the court to remove him as trustee. The Supreme Court of the United States has held that a petition for the removal of an executor, and for an accounting for the unadministered residue of the estate, is so far a part of the original probate proceedings that the executor is not denied due process of law by a personal judgment for the amount of the unadministered assets, which was rendered against him by publication on account of his absence from the state.[15] The principle is applicable here. It was doubtless in Mr. Pomeroy's mind when he wrote that "a court of equity * * * may and will remove a trustee who has permanently changed his residence to another country, or has absconded."[16] Obviously notice to such a trustee ordinarily could not be given by personal service within the court's jurisdiction.

Recognition is given by the Restatement of the Law of Conflict of Laws to the principle that removing an unfit or unsuitable trustee is a part of the general supervisory proceeding in the court in which the trust is being administered, so that the trustee, already before the court in the general proceeding, is entitled to no more than constructive notice when his absence from the state makes necessary that form of service. Section 76 of the Restatement is as follows: "If a court obtains jurisdiction over a party to an action, that jurisdiction continues throughout all subsequent proceedings which arise out of the original cause of action."

That a situation like that of the present case is within the scope of the quoted section is shown by the illustration thereunder, which we reproduce in the margin.[17]

■ Boone was not denied due process of law, because he had the benefit

---

[15] Michigan Trust Co. v. Ferry, 1913, 228 U.S. 346, 33 S.Ct. 550, 57 L.Ed. 867. Cf. Goodrich v. Ferris, 1909, 214 U.S. 71, 80, 29 S.Ct. 580, 53 L.Ed. 914, where it was held that, since probate proceedings by which jurisdiction of a probate court is asserted over the estate of a decedent for the purpose of administration is in the nature of a proceeding in rem, it is therefore one as to which all the world is charged with notice.

[16] III Pomeroy's Equity Jurisprudence 2504 (1918 Ed.).

[17] The following illustration is given under § 76 of the Restatement: "A is issued letters of administration by a probate court in state X. He collects the assets of the estate and absconds with them to another state. The court in X

of its essential elements which are notice and an opportunity to be heard.[18] Process may be adapted to the nature of the case, and of necessity there must be some form of constructive service.[19] Notice was actually brought home to the appellant by personal service in the District, so the essential elements of due process were accorded to him.

 The District Court properly examined into and determined for itself whether the North Carolina court had jurisdiction of the subject matter and of the defendant in the constitutional sense; for, when the jurisdiction of a state court is questioned in a court of another sovereignty, the latter determines whether the former satisfied due process in rendering its judgment. Operative Plasterers' and Cement Finishers' International Association of United States and Canada v. Case, 68 App.D.C. 43, 49, 93 F.2d 56, 62.

 With respect to other questions not heretofore disposed of, we hold: (a) that after Boone's removal and upon its appointment and qualification as successor trustee, Wachovia became automatically vested with title to the trust assets,[20] and entitled to sue for their recovery; (b) that it was proper for the District Court to require Boone to state his accounts so that it might be assured of a complete disclosure of the trust assets; (c) that it was also proper for the court to refuse to pass on the question of commissions, as that is an administrative problem for the North Carolina court.

It cannot be that a testamentary trustee acting under court supervision can step across the state line with the portable trust assets in his pocket and then defy the supervising court to remove him, on the ground that his wrongful removal of the assets and his own absence had rendered the court powerless. Equity is not so weak as that. The District Court's rulings were correct.

Affirmed.

---

has jurisdiction to render a judgment against A for the sum due the estate."
In the illustration, obviously A was not before the court in X by personal service of process upon him in the state of X, and the power of the court to pronounce judgment against A was based entirely upon the fact that he had subjected himself to that court's authority for all purposes connected with the administration of the estate when he applied for and received letters of administration. In like manner, Boone had personally appeared in the North Carolina court to obtain the establishment and interpretation of the trust and therefore could be said, under § 76 of the Restatement, to have put himself permanently before that court for the making of all orders and the entry of all judgments having to do with the administration of the trust.

[18] Louisville & Nashville R. R. v. Schmidt, 177 U.S. 230, 20 S.Ct. 620, 44 L.Ed. 747; Simon v. Craft, 182 U.S. 427, 436, 21 S.Ct. 836, 45 L.Ed. 1165.

[19] Ballard v. Hunter, 204 U.S. 241, 27 S.Ct. 261, 51 L.Ed. 461; Jacob v. Roberts, 223 U.S. 261, 32 S.Ct. 303, 56 L.Ed. 429.

[20] "Even apart from statute some modern courts have held that the appointment by the court of a new trustee is sufficient to vest the legal title to the trust property in him so as to enable him to perform the trust without the necessity of a conveyance by the former trustee or his heirs or representatives." 1 Scott on Trusts § 109.