Helen Page NORTON, Plaintiff-Appellant,

v.

Ruste Durnal BRIDGES, a disabled person under the law of Illinois, as Successor Trustee of the John L. Page Trust, and Patrick T. Murphy, as Public Guardian of the County of Cook, State of Illinois, as Guardian of her Estate, Defendants-Appellees.

No. 82–1877.

United States Court of Appeals, Seventh Circuit.

Argued April 6, 1983.

Decided July 15, 1983.

Hugh M. Matchett, Chicago, Ill., for plaintiff-appellant.

Cynthia R. Farenga, Chicago, Ill., for defendants-appellees.

Before PELL and ESCHBACH, Circuit Judges, and JAMESON, Senior District Judge.*

PELL, Circuit Judge.

Helen Page Norton, the plaintiff below, appeals from the district court's dismissal of that portion of her claim seeking a reduction of trust assets to her possession and an accounting and termination of the trust. The issue on appeal is whether a Wisconsin court can assert jurisdiction over the defendants in this action and, if it can, whether that jurisdiction precludes removal to the federal district court.

## I. FACTS

In 1944, John L. Page, the plaintiff's father, established a revocable inter vivos trust for his own benefit until his death, and thereafter for the benefit of his daughter, Helen Page Norton (Page trust). George H. Bridges was named trustee. The trust was recorded with the register of deeds in Jefferson County, Wisconsin. Bridges was an Illinois resident and the trust res was transferred by him or to him in Illinois.[1]

The trust provided that the trustee should manage the trust as he saw fit and pay to the beneficiary the income of the trust and so much of the principal as he saw fit. The trust document gave the trustee power to appoint in writing a successor trustee. The trust instrument also provided that, should the trustee fail to appoint a successor, "the judge of the county court of Jefferson County, Wisconsin, may at any time and upon a proper showing appoint a

---

* William J. Jameson, Senior District Judge of the District of Montana, sitting by designation.

1. The district judge found that the res was transferred to Bridges, suggesting that Bridges did not receive the assets from Page while physically present in Wisconsin. The appellant disagrees. For purposes of this appeal, it is unnecessary to resolve this factual question.

succeeding trustee if none shall have been nominated" and "said court may issue letters of trust in such matter and take such further proceedings thereon as may be requisite and proper at the time for carrying out this trust."

John Page died in the mid-1940's. George Bridges invested the trust res in a mortgage on his home in Oak Park, Illinois, with interest payable at 4%. He made payments of interest and principal to Helen Page Norton. When the trust res amounted to $10,000, Bridges agreed to Norton's request that the trust res be left intact. He continued making interest payments to her until 1956. In 1956, the beneficiary agreed to Bridges' request that the interest should be allowed to accumulate.

Bridges died in 1958. His will named his wife, Ruste Durnal Bridges, as executor and chief beneficiary. The will contained the following statement pertinent to this action:

> In making this bequest to my wife, I recognize that in the past I have received certain monies from or in behalf of HELEN PAGE NORTON, and I expect that my wife will repay to her for the use and benefit of her children any balance I still owe at the time of my death, together with interest at 4% per annum.

The mortgaged home in Oak Park, Illinois, was left to Ruste Bridges.

On June 16, 1980, Ruste Bridges was declared a disabled person by an Illinois state court. Defendant Patrick T. Murphy, public guardian of Cook County, Illinois, was named her guardian and the guardian of her estate. The Oak Park residence was part of Ruste Bridges' estate. Pursuant to an order of the Circuit Court of Cook County, and allegedly with notice to Helen Page Norton, Murphy sold the Oak Park property for $48,501.

Norton brought this action in the Circuit Court of Jefferson County, Wisconsin. She sought appointment as successor trustee, pursuant to the provision in the trust instrument empowering that court to make such appointment. She also sought a court order requiring the defendants to reduce the trust assets to her possession, and permission to administer and terminate the trust.

The defendants removed the case to the Western District of Wisconsin, pursuant to 28 U.S.C. § 1441(a), asserting that the amount in controversy was greater than $10,000 and that diversity of citizenship was present because Norton is a Missouri resident and the defendants are Illinois residents.

Norton moved the district court to remand the case to the Jefferson County Court. The defendants sought dismissal on a number of grounds or, in the alternative, transfer of the case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404.

The district court dismissed the case insofar as it sought to compel reduction of the trust assets. The court reasoned that it lacked in rem jurisdiction over the assets which were located in Illinois and that personal jurisdiction over the defendants could not be asserted under either the Wisconsin long-arm statute or the constitutional requirements delineated in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The district judge found that the plaintiff's remedy lay in the courts of Illinois, rejecting Norton's assertion that the Wisconsin circuit court has exclusive jurisdiction over the action.

The district judge did find, however, that the Jefferson County court appeared to have jurisdiction to appoint a successor trustee. That aspect of the case was remanded to the Circuit Court of Jefferson County.

## II. MERITS

Norton challenges the district court's holding that a court sitting in Wisconsin cannot assert jurisdiction over that portion of her claim which seeks a reduction of trust assets and an accounting and termination of the trust. This court must determine whether such an exercise of jurisdiction would comport with the United States Constitution and Wisconsin statutory law.

If a Wisconsin court could exercise jurisdiction, we must decide whether jurisdiction lies exclusively in the state court or whether removal to the district court was proper.[2] Before addressing first the constitutional and then the statutory issue, we touch briefly on the preliminary question whether Ruste Bridges was named successor trustee pursuant to George Bridges' will.

### A. Status of Bridges as Successor Trustee

Although the defendants have not specifically argued in their brief that Ruste Bridges lacks the status of successor trustee, they make numerous references to that characterization as being a dubious one. At oral argument, the defendants suggested that Bridges might be no more than a constructive trustee and argued that, if she were, the statute of limitations precludes any action against her at this time.

The language in George Bridges' will, pursuant to which Ruste Bridges is allegedly a successor trustee, lacks evidence of careful drafting that would make certain her appointment as successor trustee. So far as the record before this court indicates, however, that provision of Bridges' will is merely consistent with a rather informal approach to complying with the duties of trusteeship. Further, the trust instrument required only that such an appointment be in writing and, to that extent, the will fulfills the requirement. We conclude that, for purposes of resolving the jurisdictional issues urged on appeal, Ruste Bridges must be considered a duly appointed successor trustee.

### B. Constitutional Requirements

In *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court held that a state could assert personal jurisdiction over a non-resident defendant only if that defendant had sufficient contacts with the forum state. The court below found that Bridges lacked the required minimum contacts with the state of Wisconsin, citing *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), in support of its conclusion.

In *Hanson*, an inter vivos trust was created by a Pennsylvania settlor. The settlor named a Delaware trust company as trustee. The trust res was placed with the trustee in Delaware. The settlor then moved to Florida. After her death in Florida, the settlor's will was admitted to probate there. An issue arose as to whether the settlor had exercised a testamentary power of appointment over the corpus of the trust. The Florida Supreme Court held that Florida could exercise jurisdiction over the non-resident trustee and the non-resident beneficiaries of the trust even though the trust assets were in Delaware.

After Delaware refused to accord the Florida judgment full faith and credit, the United States Supreme Court reviewed the case. The Supreme Court held that Florida lacked personal jurisdiction over the trustee, stating:

> We fail to find such [minimum] contacts in the circumstances of this case. The defendant trust company has no office in Florida, and transacts no business there. None of the trust assets has ever been held or administered in Florida, and the record discloses no solicitation of business in that State by either person or mail.

357 U.S. at 257, 78 S.Ct. at 1241. *Hanson v. Denckla* is, however, distinguishable from the present controversy. The trust at issue in that case was neither created in Florida nor registered in that state. There was no provision creating a power of appointment

---

**2.** If the Wisconsin state court lacks jurisdiction over the controversy, the federal district court, sitting in diversity, similarly lacks power to resolve the controversy. *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596, 598 (7th Cir.1979), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980).

The defendants have not cross-appealed on the question whether jurisdiction to appoint a successor trustee lies in the Jefferson County, Wisconsin circuit court. We therefore do not discuss that aspect of the case further on appeal.

over successor trustees in a Florida court. Further, the trustee in *Hanson* was an institution rather than an individual, which suggests that the settlor intended administration of the trust to occur in Delaware.[3]

*Boone v. Wachovia Bank & Trust Co.,* 163 F.2d 809 (D.C.Cir.1947), upon which Norton relies is similarly not dispositive. In *Boone,* the appellant urged that a North Carolina judgment removing him as testamentary trustee was not entitled to full faith and credit. The trust had been established under the decedent's will which had been admitted to probate in North Carolina. That court had appointed Boone trustee. The North Carolina court was exercising continuing jurisdiction over the trust. Upon application of the beneficiaries, the North Carolina court removed Boone as trustee.

Prior to the suit for removal, Boone had moved to the District of Columbia. He had taken the trust assets with him. Boone was not personally served in the removal proceeding and he did not appear in North Carolina to contest the removal action. On appeal before the District of Columbia court of appeals, Boone urged that the North Carolina judgment was invalid because that court lacked both power over the trust res and personal jurisdiction over him.

The District of Columbia court held the North Carolina judgment enforceable because the North Carolina court already had jurisdiction of the trust and the assets were subject to it. The court held that constructive service was sufficient because the proceeding was characterizable as quasi in rem rather than in personam.

Norton argues that the relief she seeks against Bridges requires only quasi in rem jurisdiction rather than personal jurisdiction and therefore, under *Boone,* the Wisconsin court can exercise jurisdiction over this controversy. In considering the constitutional requirements for jurisdiction, the distinction between personal and quasi in rem jurisdiction is of little help. In *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the Supreme Court held

that the minimum contacts standard enunciated in *International Shoe* must be satisfied for a judgment quasi in rem to meet the requirements of due process. For constitutional analysis, the relevance of *Boone* lies not in how the jurisdictional basis is labeled but in whether minimum contacts between the forum and the defendant were demonstrated and, if they were, whether *Boone* supports a finding that minimum contacts exist in the present case.

There can be little question that trustee Boone had the requisite contacts with North Carolina to permit an exercise of jurisdiction. The trust had been created pursuant to the decedent's will which had been admitted to probate in North Carolina. Boone had been appointed trustee by the court.

Bridges is correct in her assertion that these facts, and the continuing jurisdiction exercised by North Carolina over the trust at issue in *Boone,* distinguish that case from the present controversy. In this case, the trust was not created pursuant to will. The settlor, rather than a Wisconsin court, appointed the original trustee who in turn appointed Ruste Bridges. The courts of Wisconsin do not have continuing jurisdiction over the trust because they have not yet taken any action regarding it.

Nonetheless, *Boone* illustrates a principle pertinent to resolution of this jurisdictional controversy. Numerous courts have held that, "[i]n the case of an inter vivos trust where the administration of the trust is fixed in a particular state, the courts of that state will exercise jurisdiction." *Restatement (Second) of Conflict of Laws* § 267 reporter's note (rev.ed.1971). Further, it is recognized that if a trust is to be administered in a particular state, that state has jurisdiction to determine not only the interests of the beneficiaries in the trust properties but also questions relating to the liability of the trustee to the beneficiaries. *Id.* § 267 comment d; *see* G. Bogert, *The Law of Trusts and Trustees*

---

**3.** As discussed *infra,* the state in which an institutional trustee is domiciled is generally

held to be the state in which the trust is administered.

§ 292, at 409 (2d ed. rev. 1977). These authorities suggest that the critical difference between *Hanson* and *Boone* is neither the actual physical location of the trust assets nor whether the trust is inter vivos or testamentary but rather that the *Hanson* trust was not administered in the state claiming jurisdiction whereas the *Boone* trust was.

Absent an express statement in the trust instrument that the trust is to be administered in a designated state, courts will attempt to infer from the instrument the settlor's intent as to place of administration. *Restatement, supra,* § 267 comment c; *cf. id.* § 272 comment c (choice of law to be applied in trust administration may be evident, despite absence of express designation, from the language of the trust instrument or other circumstances). One approach is to determine the forum most closely connected with the administration of the trust. A. Scott, *The Law of Trusts* § 568, at 3810–11 (3d ed. 1967). For instance, in *Cocke v. Duke University,* 260 N.C. 1, 131 S.E.2d 909 (1963), the issue was whether North Carolina could assert jurisdiction over the Duke Endowment pursuant to which Duke University and several other North Carolina institutions were benefitted. The trust had been created in New Jersey, subject to New Jersey law. A majority, but not all, of the trustees were North Carolina residents. North Carolina did not have personal jurisdiction over all the possible beneficiaries. Nonetheless, the assertion of jurisdiction by a North Carolina court was upheld because it was the state most closely connected with the administration of the trust.

■ When trust assets are held by an institutional trustee, the state in which that institution is located is generally considered the place of administration of the trust. *See* A. Scott, *supra,* § 571, at 3823; *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). This principle is readily explained by the fact that an institution is relatively likely to remain domiciled in the same forum over the entire period of the trust's existence. By choosing such an institution as trustee, the settlor has impliedly chosen a state of administration.

When the named trustee is an individual, however, it is less certain that his or her domicile at any particular time reflects the intent of the settlor to fix that forum as the place of administration. This follows from the greater likelihood that an individual trustee will change his or her domicile over the period of the trust's existence. If the trustee's domicile determined the place of administration, and if the trustee were a peripatetic one, the place of administration—and therefore the law applicable to the trust as well as the forum empowered to assert jurisdiction over trust questions— would change frequently. It is unlikely that a settlor would choose to make a trust, which by its nature represents a long-term plan of the settlor's, subject to such uncertainty.

■ In this case, however, George Bridges was not only an Illinois domiciliary at the time Page appointed him trustee but he remained an Illinois resident until his death. His wife, similarly, has been an Illinois domiciliary throughout the existence of the Page trust. The question is whether anything in the trust instrument indicates that the settlor intended Wisconsin—rather than Illinois—to be the place of administration of the trust.

The fact that the trust was created in Wisconsin by a Wisconsin settlor is not, by itself, dispositive. *See Cocke v. Duke University,* 260 N.C. 1, 131 S.E.2d 909 (1963). The registration of the trust in Wisconsin is more significant. Although we are aware of no Wisconsin statute addressing the significance of registering an inter vivos trust in that state, the act of registration is some evidence of the settlor's intent that Wisconsin should play a significant role in the administration of the trust.

The importance of the Wisconsin registration of the Page trust, for purposes of assessing whether an assertion of jurisdiction by Wisconsin would be constitutional, is illustrated by the provisions of the Uni-

form Probate Code.[4] The Code is framed so as to permit an exercise of jurisdiction to the full extent permitted by the Constitution. § 1–302. it applies to inter vivos as well as testamentary trusts. § 1–301 and Art. VII, pt. I, general comment. A trust must be registered at the principal place of administration, § 7–101, and a trustee who either registers a trust or accepts the trusteeship of a registered trust submits personally to the jurisdiction of the court of the registration state, § 7–103. Importantly, the draftsmen of the Code state: "Clearly the trustee can be deemed to consent to jurisdiction by virtue of registration." § 7–103.

Bridges' acceptance of the trusteeship of a trust that the settlor had registered in Wisconsin could be deemed, consistent with the Uniform Probate Code, an acknowledgment that the trust was to be administered in Wisconsin and consent to the jurisdiction of the Wisconsin court. Because the constraints of due process are recognized by the Code, this analogy suggests that an assertion of jurisdiction by the Wisconsin court over the Page trust would be constitutional.

Finally, it is significant that the Page trust explicitly accorded the Jefferson County, Wisconsin circuit court power of appointment over successor trustees and authorized that court to take further action regarding the trust. In discussing this aspect of Norton's claim, the judge below characterized the appointment of a successor trustee as an action requiring in rem jurisdiction. The district court also found it significant that the settlor *expressly* named the Wisconsin court as having power to act in this capacity. In rem jurisdiction cannot be premised on the presence of trust assets in the state, however, because the assets are in Illinois. The only basis of in rem jurisdiction, therefore, is the role played by Wisconsin in the administration of the trust. The district judge apparently reasoned that it was the express intent of the settlor that Wisconsin be the state of administration for

purposes of exercising a power of appointment and that the settlor's intent was controlling. There is little basis, however, for declaring Wisconsin the place of administration for purposes of only this one function. As stated above, when a trust instrument is not explicit as to the intended place of administration, one must scrutinize the trust instrument and consider the impact of the trust in order to ascertain the settlor's intent. *See Restatement, supra,* § 267 comment c; A. Scott, *supra,* § 568, at 3810–11; *Cocke v. Duke University,* 260 N.C. 1, 131 S.E.2d 909 (1963). Consistent with these authorities, Page's empowering the Wisconsin court to appoint a successor trustee and to take required actions thereafter regarding the trust is an indication of his intent that the trust should be administered in Wisconsin.

The result is no different if we characterize the inquiry as whether Wisconsin is the state most closely connected with the administration of the trust. Bridges being a resident of Illinois, investing the trust assets in a home mortgage in that state and, from time to time, making payments of principal and/or interest to a beneficiary domiciled in a state other than Illinois, are not sufficient to connect the trust more closely with Illinois than with Wisconsin in light of the trust's having been created in Wisconsin by a Wisconsin settlor, registered in Wisconsin, and subject to the power to appoint successor trustees that was accorded the Wisconsin court.

In summary, the registration of the trust in Wisconsin and the power of appointment accorded the Wisconsin court evidence Page's intent that the trust should be administered in that state. George Bridges and Ruste Bridges accepted the trusteeship with knowledge of these considerations and therefore can be deemed to have consented to the jurisdiction of the Wisconsin court insofar as that court might act to determine any rights or liabilities relating to the trust. *See* Uniform Probate Code § 7–103 and comment; G. Bogert, *supra,* § 292, at 412.

---

**4.** Because Wisconsin has not enacted the Uniform Probate Code, the Code is relevant only to the constitutional, rather than the statutory, jurisdictional question raised by this appeal.

These facts satisfy the "minimum contacts" standard of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and therefore an exercise of jurisdiction by the Wisconsin court over Norton's claim is consistent with due process.

### C. Wisconsin Statutory Jurisdiction

[3] The seminal Wisconsin case dealing with an assertion of jurisdiction over non-residents of Wisconsin in a trust action is *Laughlin v. Wells Building Co.,* 169 Wis. 50, 171 N.W. 755 (1919). The defendants argue that *Laughlin* precludes a Wisconsin court from exercising jurisdiction over that portion of Norton's claim which is at issue on this appeal.

Laughlin, a Wisconsin resident, filed suit in Wisconsin seeking a declaration that he was the sole trustee and enjoining other named defendants from interfering in the trust. He also sought a determination of all parties' rights in the trust. The trust assets were located in the vault of the Wells Building Company (Wells) in Milwaukee. All of the defendants, other than Wells, were Missouri residents and had been served summons in the proceeding pursuant only to an order of publication. The circuit court found the service to be insufficient.

The Wisconsin Supreme Court reversed and remanded the case, stating:

> No reason is perceived why a court having jurisdiction over the property is not an appropriate forum in which to maintain the action. Although respondents are all residents of Missouri, it may well happen that parties similarly situated be residents of different states, in which case jurisdiction by any court, except one having jurisdiction of the property, would be difficult, if not impossible, of attainment.

171 N.W. at 757. Finding that the state long-arm statute authorized service by publication against the respondents, the court remanded the case for a determination as to Laughlin's duties under the trust agreement.

*Laughlin* illustrates the principle that if a forum court has jurisdiction over the trust assets, its in rem decree may determine or affect all interests in those assets. G. Bogert, *supra,* § 292, at 406 and n. 19. Contrary to the suggestion of the appellees, *Laughlin* does not hold that the *only* court having jurisdiction over a trust dispute that involves residents of different states is the forum in which the trust assets are located.

As discussed in Section II(B), *supra,* this case involves a trust that was, according to the intent of the settlor, to be administered in Wisconsin despite the assets being physically present in Illinois. Because the trust at issue in *Laughlin* was administered in Wisconsin, one could argue that *Laughlin* supports, rather than prohibits, an assertion of jurisdiction in the present case. We are not convinced, however, that *Laughlin* should be read so broadly. We conclude that it simply does not address the situation presented by this case. Because we are aware of no other Wisconsin decision relevant to this controversy, we turn to an interpretation of the pertinent Wisconsin statutes.

Norton cites both the Wisconsin provisions that authorize in personam and in rem or quasi in rem jurisdiction. Whether the appropriate jurisdictional basis in this case is in personam or quasi in rem is not resolved by Section II(B), *supra.* It was unnecessary to resolve the question in determining the constitutionality of Wisconsin's exercising jurisdiction because demonstrated contacts between the forum and the defendant were required in either case. *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Further, the Uniform Probate Code, upon which we relied in addressing the constitutional question fails to make the distinction between personal and quasi in rem jurisdiction. § 7–103 comment.[5]

---

5. The Uniform Probate Code relies primarily upon consent jurisdiction when the defendant is a foreign trustee. § 7–103 comment. As stated above, Wisconsin has not enacted the Uniform Probate Code and we find no jurisdictional statute analogous to the consent jurisdiction upon which the Code relies.

The Wisconsin provision governing in rem or quasi in rem jurisdiction provides, in relevant part, as follows:

> A court of this state having jurisdiction of the subject matter may exercise jurisdiction in rem or quasi in rem on the grounds stated in this section. A judgment in rem or quasi in rem may affect the interests of a defendant in the status, property or things acted upon only if a summons has been served upon the defendant pursuant to 801.12.

> (1) When the subject of the action is real or personal property in this state and the defendant has or claims a lien or interest, actual or contingent, therein, or the relief demanded consists wholly or partially in excluding the defendant from any interest or lien therein.

Wis.Stat. § 801.07. This statutory section would support Wisconsin jurisdiction in the present case if the trust itself is characterized as "property" and the assets, which are physically in Illinois, are deemed to be subject to the jurisdiction of the court because the assets are subject to the trust. This line of reasoning is consistent with *Boone v. Wachovia Bank & Trust Co.*, 163 F.2d 809 (D.C.Cir.1947), and appears most consistent with the principle that in rem jurisdiction over a trust permits a determination of the rights and liabilities of all interested parties. *Restatement, supra,* § 267 comment d; G. Bogert, *supra,* § 292, at 409–10. Further, characterizing the jurisdictional basis of this action as in rem or quasi in rem is most consistent with the analysis in Section II(B), *supra,* in which we rely primarily on the relationship of the Page trust to the state of Wisconsin that is established by the settlor's intent that the trust be administered in that state.

Alternatively, Wisconsin permits as assertion of personal jurisdiction in any action which arises out of:

> c. A claim that the defendant return, restore, or account to the plaintiff for any asset or thing of value which was within this state at the time the defendant acquired possession or control over it.

Wis.Stat. § 801.05(6)(c). Because the settlor was a Wisconsin resident, the trustee's control over the assets necessarily originated when the assets were still in Wisconsin, at the time the trust was created. The applicability of this statutory section is unaffected by whether Page forwarded the assets to Bridges in Illinois or whether Bridges came to Wisconsin to take possession of them, a factual issue that is unclear from the record.[6]

Our conclusion that either or both of these statutory provisions support Wisconsin jurisdiction over the entirety of Norton's claim is supported by Wisconsin law in that the Wisconsin Supreme Court has stated that "at the time the pertinent provisions of the long-arm statute were adopted it was intended 'to provide for the exercise of jurisdiction over non-resident defendants to the full extent consistent with the requisites of due process of law.'" *Zerbel v. H.L. Federman & Co.*, 48 Wis.2d 54, 70, 179 N.W.2d 872, 881 (1970) (quoting *Flambeau Plastics Corp. v. King Bee Manufacturing Co.*, 24 Wis.2d 459, 464, 129 N.W.2d 237, 240 (1964)).

### D. Exclusivity of Jurisdiction in Jefferson County Court

Having concluded that a court sitting in Wisconsin can exercise jurisdiction over Norton's entire claim, we must determine whether the circuit court of Jefferson County, Wisconsin has exclusive jurisdiction over the controversy, thereby making re-

---

**6.** The defendants imply in their brief that even if personal jurisdiction could be exercised by a Wisconsin court over Ruste Bridges, no personal jurisdiction over Patrick T. Murphy exists. Section 801.05(12) of the Wisconsin Statutes permits an assertion of personal jurisdiction over the personal representative of a deceased person who, if he were living, would be subject to jurisdiction pursuant to Wis.Stat. § 801.-05(2)(11). Although Ruste Bridges is living, her status as an incompetent under Illinois law would suggest that section 801.05(12) governs whether jurisdiction can be asserted over the guardian of her estate. Because the basis of personal jurisdiction that would apply to Bridges is codified as Wis.Stat. § 801.05(6)(c), jurisdiction over Murphy is consistent with section 801.05(12).

moval to the Wisconsin federal district court improper. Because of his holding that no court in Wisconsin could decide the controversy, the district judge did not reach this question.[7]

The Supreme Court disposition in *Princess Lida v. Thompson,* 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939), supports Norton's contention that jurisdiction lies exclusively in the state court. In *Princess Lida,* the Supreme Court considered whether a Pennsylvania federal district court could entertain a suit brought by the beneficiaries of an inter vivos trust alleging mismanagement of the trust funds and praying that the trustees be removed and made to account for the losses suffered by the trust. The United States Supreme Court upheld the decision of the Pennsylvania Supreme Court enjoining the petitioners from proceeding further in the federal court. The United States Supreme Court distinguished cases like *Princess Lida,* in which the claims related to administration and restoration of corpus, from cases in which a plaintiff seeks merely an adjudication regarding the validity or amount of his claims in a fund. *Id.* at 466–67, 59 S.Ct. at 280–81. The principle illustrated by *Princess Lida* is that "the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other." *Id.* at 466, 59 S.Ct. at 280.

In *West v. First Fond du Lac National Bank,* 31 F.Supp. 169 (E.D.Wis.1940), the Wisconsin district court relied on *Princess Lida* in dismissing a federal action that sought an accounting and reduction of trust assets and an appointment of new trustees. The district court held that, under Wisconsin law, exclusive jurisdiction vested in the county court.

*West* involved a testamentary rather than an inter vivos trust. That distinction does not render the case inapposite, however, because the trust at issue in *Princess Lida,* upon which the *West* court relied, was created inter vivos. Further, the *West* district court relied on the fact that the will pursuant to which that testamentary trust arose was in probate in the Wisconsin court as a *separate* and *additional* ground for dismissing the federal action. 31 F.Supp. at 171.

The relief sought by Norton pertains to the actual administration of the Page trust and is very similar to that sought in *West.* The basis of Wisconsin jurisdiction in this case is fundamentally a power over "property," the trust itself to which the assets are subject.[8] *Princess Lida* and *West* support the conclusion that, if the Wisconsin state court first assumes jurisdiction over the trust, that jurisdiction is exclusive.

In *Princess Lida,* jurisdiction had been assumed by the state court by virtue of the trustees having filed accountings with the common plea court. In *West,* the admission of the decedent's will, pursuant to which the trust arose, to probate constituted the prior assertion of jurisdiction. The defendants argue that this case is distinguishable because there has been no previous assumption of jurisdiction by the Wisconsin court over the Page trust.

At issue in *Princess Lida* was whether the power of appointment accorded the common plea court would fulfill the requirement of a previous assumption of jurisdiction. The state court had been named in the trust instrument as having the power to appoint a successor trustee should the remaining trustees be unable to agree on a choice. There was no indication that such an impasse among the trustees had occurred. Nonetheless, the appointment of new trustees had routinely been reported to the common plea court which had purported to

---

7. It is conceded that the requirements of diversity jurisdiction are met in that the amount in controversy exceeds $10,000 and the parties are citizens of different states, *see* 28 U.S.C. § 1332.

8. Our having considered the applicability of Wis.Stat. § 801.05(6)(c) (in personam jurisdic-

tion) to this action does not alter our conclusion that Wisconsin has power to adjudicate the controversy primarily because of that state's relationship, as a reflection of the settlor's express and implied intent, to the administration of the trust.

confirm and ratify the action taken by the trustees. 305 U.S. at 462, 59 S.Ct. at 278–79. The petitioners urged that this action by the state court was wholly gratuitous and therefore did not constitute an assumption of jurisdiction. The Supreme Court stated that it was "unnecessary to pass upon the contention." of the petitioners. *Id.*

In the present case, the Jefferson County, Wisconsin court is not only accorded a power of appointment but will forthwith be required to exercise it. Nothing in *Princess Lida* remotely suggests that such *required* exercise of a power of appointment fails to constitute an assumption of jurisdiction. The pertinent Wisconsin statutes, in fact, imply that the power to appoint a successor trustee exists only if the court *does* have jurisdiction over the trust. *See* Wis.Stat. § 701.17(1) (appointment of successor trustee by "court") and § 701.01(8) ("court" defined as "court having jurisdiction"). The exercise of the power to appoint a successor trustee of the Page trust will constitute the first assumption of jurisdiction in this case and will entitle the Wisconsin state court to adjudicate the entire controversy, thereby excluding the federal district court from any role in the controversy.

## CONCLUSION

The Jefferson County, Wisconsin circuit court may assert exclusive jurisdiction over the entire claim urged by Norton. The varying relief Norton seeks suggests that the court having power over the trust, to which the assets are subject, is the appropriate forum in which to litigate this dispute. Such an assertion of jurisdiction is consistent with the requirements of both due process and Wisconsin statutory law. Further, the consolidation of all proceedings regarding the trust in one court is consistent with the policy favoring resolution of all trust-related questions in one forum. The order of the district court dismissing Norton's claim seeking a reduction of trust assets, an accounting, and termination of the trust is reversed. The case is remanded to the district court with instructions to remand the entire matter to the circuit court of Jefferson County, Wisconsin.