HUDSON *et al. v.* GULF REFINING CO. *et al.*

(Division B.   April 21, 1947.   Suggestion of Error Overruled May 19,
   1947.   Motion to correct Judgment Overruled June 2, 1947.)

[30 So. (2d) 66.   No. 36406.]

332

ON MOTION.

(In Banc.   May 12, 1947.)

[30 So. (2d) 421.   No. 36406.]

Lamar F. Easterling, George E. Shaw, Lester C. Franklin, and Robert E. Perry, all of Jackson, and Cameron & Wills, of Meridian, for appellants.

Stevens & Cannada, of Jackson, and **Buchanan & Harper**, of Laurel, for appellees, the Talmadge D. Lewis family.

Green & Green, of Jackson, and **Welch, Cooper & Welch**, of Laurel, for appellee, Ridgway group.

Green & Green, C. C. Richmond and Irwin W. Coleman, all of Jackson, Welch, Cooper & Welch, of Laurel, Wilbourn, Miller & Wilbourn, of Meridian, and John E. Green, Jr., of Houston, Tex., for appellee, Gulf Refining Company.

**Buchanan & Harper,** of Laurel, for appellees.

**Welch, Cooper & Welch,** of Laurel, for appellees.

Come now Welch, Cooper & Welch, solicitors for the appellees named below, to-wit: Joseph M. Perkins, Edmond L. Brown, Kenneth H. Wasson, Mrs. Emma Bethea, S. L. Tennant, C. M. Beckett, J. W. Peery, Merlyne Christie, P. C. Morrison, C. B. Small, Jr., W. O. White, Claud B. Hamill, Donald P. Ross, and E. A. Stiller, and the said appellees adopt as their own the brief of Messrs. Buchanan and Harper, attorneys, Laurel, Mississippi, filed in behalf of T. D. Lewis, one of the appellees.

**Wells, Wells, Newman & Thomas,** of Jackson, and **Beard & Pack,** of Laurel, for appellees, Tide Water Associated Oil Company and Mrs. Mamie M. Abney.

A. S. Scott, of Laurel, for appellees, Norman Husband, Carrie Kelly Husband, Jettie Kelly Windham, George Windham, Marjorie Jones and Ab Jones.

Argued orally by **Ben F. Cameron**, for appellants, and by **J. R. Buchanan**, **J. Morgan Stevens** and **R. E. Wilbourn**, for appellees.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

Thirteen heirs of N. L. Hudson, Sr., claiming to be the sole and only owners in fee of the 360 acres of land described, as well as of all the mineral interests therein, filed their bill in the Chancery Court of Jasper County against 106 defendants, including the Gulf Refining Company (which, under a mineral lease from certain of its codefendants, had developed and was developing its holdings into an actual oil-producing acreage), and against other defendants, who in addition to Gulf Refining Company, claim under other mineral leases covering in the aggregate all of the lands in question.

The claim of the said Hudson heirs is that during the year 1878 or 1879, N. L. Hudson, Sr., the then owner of the land, had conveyed all of it to his wife, M. E. Hudson, for the term of her natural life, and at her death to the children of said N. L. Hudson, Sr., for life, the remainder in fee to their children; that the deed was duly recorded, but the record thereof was destroyed by the courthouse fire in September 1932; and that complainants have not been able to find the original deed for recordation. It was further averred that N. L. Hudson, Sr., died in 1895, and M. E. Hudson, in 1928, and that subsequently to the date of the deed conveying a life estate to her, M. E. Hudson had executed deeds of conveyances to various grantees as if she owned the title in fee simple. Complainants, appellants here, also charged that by these

conveyances the 106 defendants were, as latest grantees or their heirs, the present adverse claimants; and that by reason of the facts, supra, appellees had become, and remained since the death of M. E. Hudson, the tenants as sufferance of the complainant heirs.

Nearly all of the numerous defendants answered, and Gulf Refining Company and some twenty-five other defendants made their answer cross-bills. The answers denied that Hudson had made any such deed to his wife in 1878 or 1879, or at any other time in any such terms as asserted by complainants. On the contrary, they averred that, in fact, Hudson had made his wife, M. E. Hudson, on January 23, 1880, a deed to the lands in fee simple absolute, this deed being recorded in Book 20, p. 135 of the record of deeds of the county. The defendants, appellees here, averred also that by unbroken chains of title from M. E. Hudson to them, as well as by more than forty years of adverse possession, they have become the owners, and that the complainants never in fact owned any interest what ever in the lands.

The answer by Gulf Refining Company, in addition to elaborate denials and averment touching the title by executed conveyances, adequately alleged adverse possession in its predecessors in title for the long period of years aforesaid. Making its answer a cross-bill, it prayed that its mineral lease be confirmed as against the original complainants, and prayed for alternative as well as for general relief. The twenty-five other defendants who made their answers cross-bills, in addition to setting up their particular interest in the premises, adopted all the denials and averments of the answer of the Gulf Refining Company and likewise, and as stated, made their answers cross-bills. The answer and cross-bill of Gulf Refining Company was filed on Sept. 16, 1944, and those of the other twenty-five cross-complainants on September 30, 1944. On December 12, 1945, the complainants filed a motion to dismiss their original bill aforesaid without prejudice, which motion was actively resisted

by numerous of the original defendants, and the motion was overruled.

Had there been no cross-bills, it may have been that the complainants would have had the right to dismiss, as they sought to do, but leaving that question aside for the moment, we are of the opinion that they had no right to do so and at the same time secure the dismissals of the cross-bills, unless by the consent, express or implied, of the cross-complainants.

In days gone by it was the general rule that the dismissal of the original bill carried with it the cross-bill, but the modern rule, and particularly in this State, is as stated in Griffith Miss. Chancery Practice, Section 384, which reads as follows:

"The strict theory of the cross-bill is that it is a dependent of the original bill, in consequence of which formerly it was generally held that a dismissal of the original bill carried with it the cross-bill, but this rule too has been departed from so that now if the cross-bill seeks affirmative relief separately and independently of the original bill—although, of course, growing out of or touching the same subject matter involved in the original bill, as it must—the court will at the insistence of the cross-complainants retain it and proceed with its issues, if the cross-bill and its facts be complete enough within themselves and without the aid of the original bill to make the granting of relief thereon practicable and proper. It is at last a matter within the sound discretion of the court to be wisely exercised towards the advancement of justice between the parties. And not only will the court retain the cross-bill in every case where if the matter had been brought in an original bill it would have retained it, but it should be kept in mind that the advancement of our procedure has developed a definite disfavor towards any practice which tends to turn parties out of court when once they were fairly in, and of sending them away either to transform the pleadings or else to begin the matter over again. Therefore, it is only when the matter

of the cross-bill, independently considered, is so clearly of law as to be distinctly a better subject of determination at law, that a cross-bill will be dismissed, or transferred, merely because the original bill has been dismissed.''

This statement is in accord with the weight of authority elsewhere, as may be found in 30 C. J. S., Equity, Section 388, pp. 804-806.

Thus it is seen that the cross-bill will be retained where, if the matter therein had been brought in an original bill, it would have been retained, and that in such case it is only when the matters of the cross-bill, independently considered, are so clearly of law as to be distinctly a better subject of determination at law, that a cross-bill will be dismissed merely because the original bill has been dismissed. In other words, where the relief sought by the cross-bill is a matter cognizable at law, dismissal of the original bill carries with it, generally, the cross-bill, and the cross-complainant is relegated to his remedy at law. But here the prayer of the cross-bills sought confirmation of title to land, and hence was equitable, as pointed out further in the succeeding paragraph.

Here, the cross-bills bring forward, with elaboration, the issue of adverse possession, and rely thereon in addition to the title by conveyances, a feature in respect to which no substantial aid is furnished by the original bill, and as to Gulf Refining Company it prays that its title be confirmed in it as against all the original complainants. This right to have an affirmative adjudication in chancery of title to real estate is one conferred by statute, supplementary to the ancient rules in equity on that subject. It is not so clearly of law as to be distinctly a better subject of determination at law, the fact being that, at this day in this State, land-title questions are almost always presented in the chancery court, the action of ejectment having become nearly obsolete in actual practice, and certainly so in cases involving parties as numerous as in the instant case.

It is said, however, that as to Gulf Refining Company, the latter filed no objections to the motion to dismiss and thus did not insist that its cross-bill be retained, to which Gulf Refining Company replies, citing Griffith Chan. Prac., Section 407, that no formal objection or response to such a motion was required, and the burden of proof to support it was on the movant; and further that the record shows that Gulf Refining Company, by its attorney, was present and participated in the hearing wherein the motion to dismiss was resisted.

We are of the opinion, therefore, that the court was correct in not dismissing the cross-bills, and in proceeding to a final hearing on them, without the attendance of cross-defendants, who purposely absented themselves; and, further, that upon the record the court was correct in sustaining the cross-bills on the merits.

This brings us back to the original bill—whether it should have been dismissed, retaining the cross-bills. This, as it seems to us, has now become, as to all practical purposes, a moot question. Under the cross-bills every issue and question, which could have been determined under the original bill, were adjudicated against the original complainants and cross-defendants in favor of cross-complainants and their privies. Thereby the whole matter has now become res adjudicata. Von Zondt v. Town of Braxton, 149 Miss. 461, 465, 115 So. 557; Watkins v. Mississippi State Board, 170 Miss. 26, 32, 154 So. 277. Upon similar principles see also Griffith's Chan. Prac. Sections 263, 363, 571, 624.

In view of the foregoing announcement of our conclusion here, which completely determines the ultimate solution of the problem on the appeal before us, we do not deem it necessary to discuss other points, on both sides, ably argued in the several briefs filed.

The decree of the Chancery Court will, therefore, be and is affirmed.

Affirmed.

**Griffith, J.**, delivered the opinion of the court on motion.

This case was submitted to Division B of this Court on March 24, 1947, and was decided by that Division on April 21, 1947 30 So. (2d) 66. Within the time allowed, a suggestion of error was filed, and at the same time this motion that the case be transferred to be heard on the suggestion of error by the Court in banc. Motions by any of the parties to transfer from a Division to the Court in banc have never heretofore been entertained, and this for obvious reasons. The only methods by which a case in a division may be transferred to the full court are those set forth in the amendment to the Constitution of 1890, now known as Section 149A of the Constitution, Vol. 1, Code 1942, pp. 221, 222, in addition to which a division, upon its own motion, but never on the motion of a party litigant, when the division deems it expedient or proper to do so, may take a case in that division into the Court in banc. These are matters of internal administration by the Court with which parties have no litigious interest, and they will not be heard on the subject either by the Court in banc or by Divisions, or by application to any individual Judge, else the Court might be flooded with motions and applications of that sort.

When one of the Judges of a division is disqualified in a particular case a litigant may suggest to the presiding judge that for that reason, and for that reason alone, it should be transferred to the other division, and this is sometimes allowed, although not as a matter of right.

The Court in banc takes notice of the present motion because, and because only, of the following ground assigned therein, quoting it:

"This Court has been sitting in banc and hearing all cases presented for a number of years prior to the month in which this case was submitted and no minute entry was made by the Court creating divisions as the Court is now constituted, or assigning causes for hearing by divisions."

The only rule adopted by the Court as a rule on this subject is Rule 34, and the only requirement by that rule as to minute entires, so far as the present motion is concerned, is that the assignment of the Judges to the two divisions shall be entered on the minutes, and this has been done as to the several Judges of the Court. In the thirty years of the Court's administration since the adoption of the aforementioned amendment, it has never been deemed necessary to make any entry on the minutes when the Court decided to go into divisions or from divisions to the Court in banc. It was not necessary to do so on March 1st, this year, and we entered no such unnecessary order.

We decided at our in banc conference on Friday, January 31, 1947, to sit in divisions on and after March 1, 1947, and until further notice. The Clerk was officially informed of this decision and on the next day, February 1, 1947, he notified, in writing, all persons having business before the Court in the following language: "The Court this date decided to resume settings in Divisions—A and B—and ordered the following setting of cases to be heard in the month of March, 1947," and this was followed by the lists of cases to be heard by the divisions in that month, and this has been done for each succeeding month.

This was all that was necessary, and the Court has been lawfully sitting in divisions since March 1, 1947. The Court in banc takes notice of no other ground in the said motion, and the notice so taken does not operate to put the case in banc, and it can be taken in banc by no other method than those mentioned in the first two paragraphs of this opinion.

The motion to transfer is overruled.