### HUDSON et al. v. LEWIS et al.
### No. 13240.

United States Court of Appeals
Fifth Circuit.

April 19, 1951.

Rehearing Denied May 22, 1951.

Ben F. Cameron, Meridian, Miss., George E. Shaw, Jackson, Miss., for appellant.

Garner W. Green, J. Morgan Stevens, Irwin W. Coleman, Jackson, Miss., R. E. Wilbourn, Meridian, Miss., W. S. Welch, J. R. Buchanan, Sam V. Pack, Laurel, Miss., for appellee.

Before HUTCHESON, Chief Judge, and McCORD and BORAH, Circuit Judges.

HUTCHESON, Chief Judge.

This is an appeal from summary judgments entered against plaintiffs in four suits consolidated as one for hearing and appeal. Though they were brought to establish ownership of, and quiet title to, 360 acres of oil bearing land, this appeal is not concerned with questions of title as such.

Reduced to its essence, what and all that is in question here is whether the district

judge was right in holding that matters and things determined and adjudged against plaintiffs in the suit they had brought in a Mississippi Chancery Court, having jurisdiction of persons and subject matter, may not be again litigated by the plaintiffs against the same persons in a federal court of that state.

■ Appellants concede that the general rule or principle of *res adjudicata* applies with the same force between state and federal courts as between courts of the same or other states. They urge upon us, though, that the state court in denying them the right to dismiss their suit and proceeding to judgment against them, denied them due process and the equal protection of the laws; that the judgment was therefore entered without jurisdiction; and that it was subject to collateral attack and not binding on or pleadable against them as *res adjudicata*.

In support of this view, appellants, putting their main reliance on two cases, Bass v. Hoagland, 5 Cir., 172 F.2d 205, and Griffin v. Griffin, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635, cite in addition a host of others.[1]

Appellees, on their part, relying on the record made in the state court proceedings and the leading authorities on *res adjudicata*,[2] state and federal, urge upon us that this is not a case as some of those cited by appellants, particularly the Bass and Griffin cases, were, where the judgment relied on was taken in the absence, and without the knowledge, of the complaining party.

They point out: that quite to the contrary here every step that was taken and everything that was done in the state courts was taken in the presence, and with the full knowledge, of appellants. They point, too, to the fact that after the judgment was entered, appellants, having available all, and making substantially all, of the constitutional points and contentions they make here, took the case to the Supreme Court of Mississippi, where the judgment was affirmed, Hudson v. Gulf Refining Co., 202 Miss. 331, 30 So.2d 66, 421, and then by application for certiorari laid the whole matter before the Supreme Court of the United States, and that court denied the writ. Hudson v. Gulf Refining Co., 332 U.S. 775, 68 S.Ct. 84, 92 L.Ed. 359.

They insist that, all of the substantial questions appellants sought to litigate below having been thus fully litigated and determined against them, appellants are completely estopped and barred from further litigating them, by the judgment of the state court and the principle of *res adjudicata*, that litigation must have an end.

Stripped of all that is irrelevant, superfluous, redundant and misleading in the record, and stated in the simplest terms, the undisputed facts on which the motions for judgment were based and the judgments predicated fully support, indeed demand the entry of, the judgments appealed from. Briefly summarized, they are as follows:

On June 10, 1944, oil having shortly prior thereto been discovered on the land involved in these suits, appellants, as complainants, filed their bill of complaint, in Cause No. 398, in the Chancery Court of the First Judicial District of Jasper County, Miss. In it, alleging their ownership of the lands, and the false claims of defendants

---

1. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Davis v. Wechsler, 263 U.S. 22, 44 S.Ct. 13, 68 L.Ed. 143; Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832; Boone v. Wachovia Bank & Trust Co., 82 U.S.App.D.C. 317, 163 F.2d 809, 173 A.L.R. 1285.

2. Todd v. Todd, 197 Miss. 819, 20 So.2d 827; Bates v. Strickland, 139 Miss. 636, 103 So. 432; Mitchell v. State, 179 Miss. 814, 176 So. 743, 121 A.L.R. 258; Roche v. McDonald, 275 U.S. 449, 48 S. Ct. 142, 72 L.Ed. 365; Union Natl. Bank v. Lamb, 337 U.S. 38, 69 S.Ct. 911, 93 L.Ed. 1190; Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832; Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524; Iselin v. LaCoste, 5 Cir., 147 F.2d 791; Givens v. Moll, 5 Cir., 177 F.2d 765; Alliance Trust Co. v. Armstrong, 185 Miss. 148, 186 So. 633; Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104; American Surety Co. v. Baldwin, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231; Duett v. Pine Mfg. Co., Miss., 48 So.2d 490.

thereto, they prayed: that the court cancel certain instruments in so far as they purport to convey plaintiffs' interest in said lands or any part thereof; that the lands, together with all oil produced therefrom be decreed to be their property; and that they be awarded writs of possession, and other writs and processes, for the lands, for the restitution of the oil or the payment of the value thereof, and for a full accounting.

Answers were filed by all of the defendants claiming paper title and title by adverse possession, and the defendant, Gulf Refining Company, one of the mineral lessees, filed a cross bill.

In the suit important proceedings were taken, interrogatories were propounded by the plaintiffs and under the powers of the state court, Sec. 1659, Mississippi Code of 1942, motions were made against the principal defendants to inspect title deed, abstracts, documents, etc.

The motions were sworn to and set down for hearing and on March 15, 1945, a hearing was had, testimony taken, and the motions were granted in part and overruled in part.

Among the orders entered was one requiring Lewis, one of the defendants, to place in the hands of his attorney for the inspection of plaintiffs all of the original deeds or conveyances describing any of the land involved in the suit and dated prior to September 10, 1932, the date the courthouse and records of Jasper County burned.

These proceedings developed, among other things, the existence of an abstract of title made and certified prior to the burning of the courthouse and that the defendants did not have in their possession the original or copies of conveyances claimed by plaintiffs to exist limiting the title under which defendants claimed.

After all these proceedings had been taken, and the case had been pending for a year and a half, the complainants, on Dec. 12, 1945, filed a motion for a voluntary dismissal, reading as follows: "Come the complainants by their attorneys and move the court to dismiss this suit without prejudice at the cost of the complainants which costs are tendered herewith." and simultaneously plaintiffs filed their suits in the federal court.

The defendants resisted this motion, one of the grounds being: that the case had proceeded to such a point and such steps had been taken in it that defendants had secured substantial rights which would be destroyed by dismissal; and that, under Mississippi law, Mitchell v. Film Transit Co., 194 Miss. 550, 13 So.2d 154, such dismissal ought not to be allowed.

Other matters set up by the defendants were: that they had been prevented by the long pendency of the suit from disposing of their rights or receiving and realizing on their royalties; that the terms of the protective leases Gulf and Tidewater had taken from plaintiffs required the determination in the state court suit of the rights *vel non* of plaintiffs; and the pendency of Gulf's cross bill.

The motion coming on for hearing at the January term, 1946, the court took it under advisement and, on January 18th, entered the following order: "This cause having been heard at the regular January, 1946, term, and having been submitted to be decided in vacation, on motion of complainants for leave to dismiss their bills without prejudice, after due consideration, it is ordered and decreed that said motion be, and the same is hereby, denied and overruled."

Thereafter the cause was set for trial at a special term of the Chancery Court beginning the first Monday in May, 1946, and notice thereof was given to all parties. Plaintiffs, appearing in person and by written motion [3] to protest the trial's proceed-

---

3. This motion read in part as follows: "Come the complainants and insisting that this court is without jurisdiction to proceed further and not entering their appearance except to file this protest, upon the convening of the term and objecting to a trial being had * * *" It then

set out the reasons for their objections, in substance as follows:

(1) that they had entered the court and pursued the case, at great expense to themselves, in good faith; and that the only jurisdiction the court had ever had was conferred on it by the voluntary

ings, and failing in their written and oral argument,[4] announced their withdrawal[5] from the court room and from participation in the trial of the case. The defendants offered their evidence, and, the evidence all in, the decree[6] of the Chancery Court,

acts of the plaintiffs in filing the suits; (2) that on Dec. 12, 1945, pursuant to the right given them by the Constitution, Statutes and Laws of the State of Mississippi and the Constitution, Statutes and Laws of the United States, they filed their motion to dismiss this case without prejudice, and thereby withdrew their appearance in this court and withdrew from this court any jurisdiction it ever had to proceed herein, except to enter an order dismissing the same without prejudice; that before the entry of the order of this court overruling complainants' motion to dismiss, this court was advised that complainants had, on Dec. 11, 1945, filed four actions in the District Court of the United States for the Eastern Division of Mississippi;

(3) that the federal court actions were filed in the federal court on the basis of diversity; that the jurisdiction of the federal court has attached and any proceedings in this court will be moot and without force and effect; that plaintiffs are non residents of the state of Mississippi and have the right guaranteed to bring their suit in the federal court;

(4) that if this court should fail to recognize and give effect to the absolute rights of complainants to dismiss their suit without prejudice and to proceed in the United States Courts, or should attempt to take any action or enter any decree at this term of court, or should attempt to require these complainants to go to trial in the cause or to proceed further, all such attempted action would be to deny to the complainants rights guaranteed to them by the Constitution and Laws of the United States and rights conferred upon them by Sec. 24 of the United States Judicial Code, and Art. 3, Sec. 2 of the Constitution, and would be to deprive them of their property without due process of law and to deny to them the equal protection of the laws and would be an illegal and unwarranted divesting of the jurisdiction of the District Court of the United States, the benefit and protection of all of which is specifically claimed by the complainants.

Wherefore complainants object to any action being taken by the court except to dismiss their suit without prejudice.

4. At which time the following colloquy occurred:

"Mr. Wills, for the plaintiffs: Our sole purpose is to present this objection to your Honor's proceeding in the case.

"The Court: Is it your contention that this court is without full power to try the issue?

"Mr. Wills: It is our contention when our motion was made to dismiss, this court was divested of jurisdiction. This objection is interposed to reaffirm that position to make clear to your Honor what the purpose is.

"Mr. Wills: It is a written document and it speaks for itself.

"The Court: Anything else?

"Mr. Green: On behalf of Gulf Refining Co., we have a cross bill. We thought and still think that the exclusive jurisdiction to adjudicate this case is vested in this court. We are ready so far as the Gulf Refining Co. is concerned to go on with the case and have it determined.

"The Court: Anything else?

Then various lawyers for the defendant stated to the court that they were ready and that the court had prior and full jurisdiction and that they desired the court to proceed.

"The Court: I understand you all agree it is not necessary to enter any order on the allegations in the exceptions with reference to the threats that this court cannot protect its litigants and solicitors. I will proceed with the trial of the case."

5. "Mr. Wills: Complainants are still standing on their objection and in doing so we beg leave to respectfully withdraw from the court room.

"The Court: All right.

"Mr. Buchanan: Before they withdraw I wish to say that we wish to put on our proof.

"The Court: All right."

6. This decree, reciting all that had occurred, including the appearance of complainants' attorneys, their written objections to the jurisdiction of the court, but that they had asked for no order to be entered thereon and that all of the defendants had announced ready for trial, adjudged: (1) that the court has jurisdiction to adjudge and decree in the manner and form as it now does, and does not recognize the right of complainants to withdraw as was wrongfully done; (2) that complainants were not entitled to the relief prayed for or for any relief, that their bill and amendments were dismissed with prejudice; (3) that their demurrers to the cross-bill of Gulf Refining Co. were overruled,

relied on as *res adjudicata* here, was entered.

From this decree, entered on May 6, 1946, the plaintiffs appealed to the Supreme Court of Mississippi.[7] This appeal was fully considered, its grounds were rejected as not showing error, and the decree of the Chancery Court was affirmed.[8]

Thereafter the appellants applied to the Supreme Court of the United States for writ of certiorari on the grounds of the federal questions raised by them below, and the writ was denied.

On the basis of these proceedings in the state courts and in the Supreme Court of the United States, the defendants filed in the federal court their motions for summary judgment. In them they set up: the judgment of the Chancery Court of the First District of Jasper County, Mississippi, to which plaintiffs and these defendants were parties; that the decree of May 6, 1946, was affirmed by the Supreme Court of Mississippi; that plaintiffs sought a review of said decision by petition for certiorari; that such petition was denied; that on November 5, 1947, the Supreme Court of Mississippi certified its mandate to the Chancery Court, affirming the decree of May 6, 1946; and that the mandate had been received and filed.

Attached to the motion was a full, complete, and true transcript of all the pleadings and evidence in the Chancery Court of Mississippi in cause No. 398, the entire record of the proceedings in the Supreme Court of Mississippi and of the transcript filed in the Supreme Court of the United States.

It is on the basis of this record of persistent litigation in the state court that the district judge entered the judgment appealed from. It is on this basis that the appellees confidently rely here. On this basis we agree with the district judge and with appellees that the judgment appealed from was right and that the appeal is without real substance.

Plaintiffs, opposing the motions for summary judgment on grounds of violation of due process already fully litigated by them in the proceedings set out above, insisted that in effect, because of plaintiffs' claim that the judgment violated due process, the federal court should again examine and relitigate the contentions already examined and adjudicated against them in the state court.

In addition, they sought by affidavits of dealings with Gulf Company to impeach Gulf's judgment on its cross bill, and also put forward one or two other matters which, though present in the record, had not been precisely put forward and determined in the previous proceeding.

The district judge thought, and we agree with him, that these matters added nothing of strength to plaintiffs' position. As to the affidavits about Gulf, the district judge thought, and we agree with him, that, in view of the record and the terms of the protective leases made to Gulf, they presented no material issue of fact. As to the other matters put forward now as new, the district judge thought, and we agree with him, that if any of them had not been already specifically litigated and determined in the prior proceedings, they were within the compass of the issues determined there, and were, therefore, as effectively adjudicated as if they had been specifically put forward and specifically adjudged.

Geared to claims of a denial of substantial justice by entering judgment against

---

and, that the Gulf Refining Co. is entitled to the relief prayed for in its cross-bill; (4) that the leases from the defendants are adjudged to be good and valid and that all claims of title, right, or interest on the part of the complainants and cross-defendants to any of the lands covered by the leases are cancelled, annulled, and for naught held.

7. Assigning as errors: (1) the overruling of their motion to dismiss without preju-

dice; (2) the proceeding to a hearing and the entry of a decree; and (3) that the Chancery court, in proceeding with the trial and entering a decree against them, had deprived them of their property without due process of law, and had denied them the equal protection of the laws, all in violation of the Constitution and laws of the United States.

8. Hudson v. Gulf Ref. Co., 202 Miss. 331, 30 So.2d 66.

appellants without affording them an opportunity to be heard, and thus denying them a fair trial, the appeal is based upon the general contention that, absent due process, the state court was without jurisdiction to proceed to judgment.

If the record supported the claim that, in ruling and proceeding as he did, the district judge acted arbitrarily and without giving appellants an opportunity to be heard, it might well be that a case for collateral attack was made out. The shoe, however, is really on the other foot. The case is one of the plaintiffs', arbitrarily and without right, refusing to be heard, not of the judge's refusing to hear them. On the undisputed facts of record: the plaintiffs at first assumed to prescribe to and for the Chancery Court the procedure it must follow; next, when the court refused to follow plaintiffs' suggested procedure, they denounced the court's action as unconstitutional. Finally, when the court announced that the trial of the case would proceed with or without them, plaintiffs, instead of remaining in the court and protecting their interests in the forthcoming trial, deliberately made a point of withdrawing from the court room, ceremoniously washing their hands of the whole affair, and absenting themselves from the trial.

Not content, however, after the judgment had gone against them, to stand on this show of independence and unconcern, recognizing the court's complete jurisdiction over them and the binding unreversed force of its judgment, they took an appeal from it, and, duly filing their assignment of errors, presented to the Supreme Court of the state all the substantial questions they seek to have the federal court relitigate.

If this pattern, whereby a plaintiff seeks on constitutional grounds to obtain two trials of the same issues, first in the state court and, if a loser there, next in the federal court, is to become established, the state courts will sink into an insignificance and obscurity not heretofore dreamed of by the greatest partisans, the most extreme advocates of the extension of federal power. No case has been, nor, so long as our federal system continues, can be, cited in support of such an extreme doctrine of the futility and impotence of state courts, their complete subordination to the super sovereignty of federal courts.

■ Quite to the contrary of the pitifully subservient place in our judicial system accorded by appellants to state courts by their claims under the facts, federal and state courts alike have spoken, they will continue to speak, without a dissentient note in one clear strain. This is to the effect that where a court, whether state or federal, acts within the competence of its jurisdiction, no other court may collaterally attack its judgment.

In the case particularly relied on by appellants and cases similar to those, where collateral attacks succeeded, the precise, the definite, basis of their success was that the court whose judgment was under collateral attack had not proceeded with jurisdiction. In some of them it had not acquired jurisdiction of the person or subject matter affected by the decree. In others, though it had acquired jurisdiction, it had, thereafter, and without the actual knowledge of the complaining person, proceeded in such manner as to deny him due process, that is, a fair and reasonable opportunity to be heard.

In short, in some of these situations, the court had not, in respect of the matter complained of, acquired jurisdiction. In others, it had proceeded beyond the jurisdiction theretofore acquired.

Here complainants not only admit, they affirm, as indeed they must for they themselves invoked its exercise; that the Chancery Court in the beginning had complete jurisdiction of their persons and of the subject matter. The admit: that they themselves presented to the Chancery Court for decision the precise question of their right to dismiss their action without prejudice; that the judgment of the court, on their motion, was made after they had been heard; and that they were advised of the judgment. They admit, too, and the record shows, that they were notified by the judge that the cause would be set for trial; that on the day fixed they appeared in open court; and that they stood upon their right, as they conceived it, to withdraw if the

court did not reconsider his denial of their motion to dismiss. Finally, they admit that they first insisted that the court reconsider its action, and that when they were advised that it would not do so and the case would go to trial whether they stayed in or withdrew, they, without asking for a continuance, postponement, or other delay, voluntarily withdrew.

In doing this they put up no reason against the trial's going forward except their claim that they had a right to dismiss their suit, and they withdrew in face of the knowledge that the judge did not agree with them and that the case would proceed on the pleadings, direct and cross, and the evidence to be offered thereon and thereunder.

The district judge determined, and set the determination out in his decree, that the court had jurisdiction to proceed and that, upon the undisputed facts of record, plaintiffs were not entitled to judgment and the defendants were.

Matters standing thus, plaintiffs, submitting to the jurisdiction of the trial court, and proceeding by a direct attack on the judgment appealed to the Supreme Court of Mississippi, all questions arising on and out of the judgment, including their right to dismiss without prejudice, the right of the district court to proceed to judgment and the breaches of constitutional due process it now claims.

The Supreme Court affirming the decision of the District Court, plaintiffs took their constitutional questions to the Supreme Court of the United States by writ of certiorari, and the writ was refused.

To say, in the face of all the hearings they have had, that they have been condemned without the due process of a hearing is a complete contradiction in terms.

We are in no doubt, therefore: that the claims of appellants that, for the reasons they assign, the judgment was subject to collateral attack, are completely without basis; that the district judge was right in receiving the judgment as *res adjudicata* and refusing to permit relitigation and re-examination of the questions it had determined.

We are further of the opinion that if, despite our expressed views to the contrary, we should concede that plaintiffs are entitled, as a basis for determining whether the judgment of the Chancery Court was entered without jurisdiction, to have the district court and this court determine for themselves whether, in denying plaintiffs the right to dismiss their bill without prejudice and in proceeding to judgment against them after they had withdrawn, this concession would not avail appellants. For we are in no doubt that if the federal court had examined the question and determined it afresh on its merits, it would have been bound to conclude that, in acting as it did, the Chancery Court acted within its powers, in accordance not only with Mississippi law as decided by the Supreme Court of Mississippi, on the appeal from its decision, but as shown by the authorities,[9] a few of which are collected and cited below, in accordance with the law generally.

The judgment was right. It is

Affirmed.

9. Griffith, Mississippi Chancery Practice, Sec. 534–5; Mitchell v. Film Transit Co., 194 Miss. 550, 13 So.2d 154; U. S. Motors Service v. Tropic Tire, 8 Cir., 57 F.2d 479; Home Owners Loan v. Huffman, 8 Cir., 134 F.2d 314; Moore, Federal Rules of Civil Procedure, Vol. 3, (Discussion of Rule 4); Olsen v. Muskegon Piston Ring, Co., 6 Cir., 117 F.2d 163; Evans v. Teche Lines, 5 Cir., 112 F.2d 933; Cleveland v. Higgins, 2 Cir., 148 F.2d 722; Pullman Palace Car Co. v. Central Trans. Co., 171 U.S. 138, 18 S.Ct. 808, 43 L.Ed. 108.